FILED & JUDGMENT ENTERED
Steven T. Salata

September  8  2017

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

In Re:

**TERRY EDISON LEVINER, JR.**  **Case No. 16-31885**
**SSN xxx xx 9751**  **Chapter 13**
**2006 Saratoga Dr**
**Gastonia, NC 28056-6542**

         **Debtor.**

**KATHY LEVINER,**

         **Movant,**

**v.**

**TERRY EDISON LEVINER, JR.**

         **Respondent.**

## ORDER DENYING DEBTOR'S ORAL MOTION TO DISMISS
## MOVANT'S OBJECTION TO CONFIRMATION AND
## SUSTAINING OBJECTION TO CONFIRMATION

This matter came on for an evidentiary hearing on June 29, 2017 on the Movant's

Objection to Confirmation ("Objection") and the Debtor's oral motion to dismiss the Movant's

Objection.  Present at the hearing were the Movant, Kathy Leviner ("Movant"), represented by

Frederick L. Henderson Jr., and the Debtor-Respondent, Terry Edison Leviner, Jr. ("Debtor"), represented by Matthew C. Sherlock.  The Movant alleges in her Objection that the Debtor's Chapter 13 plan does not propose to pay all of his domestic support obligations under the parties' pre-petition Separation and Property Settlement Agreement because paragraph 4(a) of the Debtor's plan proposes to sell the Movant's residence.  The Debtor seeks dismissal of the Movant's Objection for lack of adequate due process on the grounds that the Movant did not timely file an adversary proceeding or a proof of claim.

The Court has reviewed the record in this case including the Movant's Objection and Memorandum of Law in Support of Objection to Confirmation, the Debtor's Response to Objection to Confirmation ("Response") and Brief in Support of Motion to Dismiss Movant's Objection to Confirmation ("Debtor's Brief"), and the Movant's reply brief, and the Court has heard the evidence and arguments made by counsel for the Movant and counsel for the Debtor at the hearing.  For the reasons that follow, the Court determines that the Debtor did receive adequate due process of the Movant's Objection, and the Court concludes that the Debtor's obligation to maintain the mortgage payments on the note secured by the residence where the Movant lives is in the nature of support and maintenance.  Accordingly, the Court determines that the obligation is a domestic support obligation as defined by 11 U.S.C. § 101(14A) that is non-dischargeable under 11 U.S.C. § 523(a)(5) and a priority claim under 11 U.S.C. § 507(a)(1)(A) that must be paid through the Debtor's plan pursuant to 11 U.S.C. § 1325(a)(8). Therefore, the Debtor's oral motion to dismiss is hereby **DENIED**; and the Movant's Objection is hereby **SUSTAINED** because the Debtor's Chapter 13 plan does not propose to maintain the mortgage payments as required by the parties' pre-petition Separation and Property Settlement Agreement.

2

## PROCEDURAL HISTORY

On November 22, 2016, the Debtor filed his Chapter 13 bankruptcy petition and, on December 5, 2016, his Chapter 13 plan (Doc. 9). Section 2.a ("Secured Claims") of the Debtor's plan proposes to pay a Wells Fargo note secured by the Movant's residence at 157 Howie Drive, Mt. Holly, North Carolina "direct." Additionally, Section 4.a ("Special Terms") of the Debtor's plan proposes to sell the Movant's residence in order to fund the plan. On February 10, 2017 (three days after the final section 341 Meeting of Creditors was held), the Movant filed her Objection (Doc. No. 19). On the same day, the Objection was served by first class mail on the Debtor and his counsel. A hearing on the Objection was set for February 28, 2017, and the parties agreed to continue the matter for a special setting on April 21, 2017. The deadline in this case to challenge dischargeability of certain debts was March 6, 2017, and the deadline to file a claim in this case was April 3, 2017.

In the Objection, the Movant set forth the provisions of Section 9.A of the parties' pre-petition Separation and Property Settlement Agreement ("Settlement") that require the Debtor to refinance the note secured by the Movant's residence in his name and to be " 'solely responsible for payments on the new note and . . . make such payments in a timely manner so that the property cannot be foreclosed upon' " as well as the provision that the Movant " 'shall have the right to live in the house located at 157 Howie Drive, to the exclusion of (the Debtor) for her lifetime or until she remarries, unless (the Movant) should sooner elect to move from the property.' " Objection ¶¶ 5–6. The Movant claimed that the "Debtor's obligation to maintain the mortgage payments on the note secured by the Residence so that the Movant can live there for her lifetime is in the nature of support and maintenance . . . in light of the Movant's meager income . . . and because it extends indefinitely beyond the duration of the alimony payments to

ensure the Movant will not lose her home even after her income is further reduced." Id. at ¶ 8. The Movant requested that the Court deny confirmation of the plan pursuant to 11 U.S.C. § 1325(a)(8) as failing to pay all domestic support obligations under the Settlement because Section 3.b ("Priority Claims - Domestic Support Obligations") of the plan made no provision for the Debtor's ongoing obligation to support and maintain the Movant by making all of the payments on the note secured by her residence so that she could continue to live there for her lifetime. Id. at ¶¶ 11–12.

On April 11, 2017, the Debtor filed his Response (Doc. No. 21). In paragraph 5 of his Response, the Debtor stated that the Movant asked the Court to evaluate whether the subject provisions of Section 9.A of the Settlement are non-dischargeable domestic support obligations. Response ¶ 5. The Debtor then proceeded to argue in his Response that the subject obligations were in the nature of property settlement and, therefore, requested that the Movant's Objection be denied and the plan confirmed. The Debtor further requested an award of attorney's fees against the Movant for defending against an action for determination of dischargeability of debt under 11 U.S.C. § 523. Id. at ¶ 22. After articulating the exact issues at the heart of the Movant's claims in her Objection and defending against them with specificity, the Debtor's Response did not seek dismissal of the Objection for lack of adequate due process.

On the eve of the hearing scheduled for April 21, 2017, the Court had to reschedule the hearing to May 26, 2017 for unexpected reasons out of the control of both the Court and the parties. During the additional time afforded by this unforeseen continuance, the Debtor served a subpoena (Doc. No. 23) on the Movant's domestic law attorney, Joy M. Chappell. The first subpoena was served on May 10, 2017, but no responsive documents existed. The subpoena was amended and served again during the week prior to the May 26, 2017 hearing, and responsive

documents were provided immediately.  On May 26, 2017, the Debtor and his counsel appeared at the hearing prepared to defend against the Movant's Objection; however, the Movant requested a continuance so that Ms. Chappell could be available to testify regarding the documents she had to produce on such short notice.  Only at this time did the Debtor orally move the Court to dismiss the Objection for lack of adequate due process on the grounds that the Movant had not timely filed an adversary proceeding or a proof of claim.  The Court noted that there appeared to be no due process issue, but the Court continued the hearing to June 29, 2017 and gave the Debtor an opportunity to file a brief in support of his oral motion to dismiss.   At the request of the parties, the Court also conditionally confirmed the Debtor's plan as to the other provisions not at issue in the Movant's Objection and, on June 27, 2017, the Movant filed a proof of claim for the pre-petition alimony arrearage amount of $16,000.00 consistent with Section 3.b of the Debtor's plan so that the Chapter 13 Trustee's disbursements could be properly processed.

On June 23, 2017, the Debtor filed his Debtor's Brief (Doc. No. 29).  The Movant filed her reply on June 28, 2017 (Doc. No. 30).  At the hearing, the parties agreed that no further discovery was needed.

## FINDINGS OF FACT

The Movant and the Debtor entered into the Settlement on August 1, 2011 after being married since September 25, 1976.  Nancy E. Foltz testified that she represented the Movant and negotiated the Settlement over several months with J. Thomas Hunn, who represented the Debtor and who subsequently filed the Debtor's Motion for Summary Judgment for Absolute Divorce.  While the Debtor made some different suggestions about the nature and extent of his representation when entering into the Settlement, the plain language of the Settlement states that the Debtor was represented by Mr. Hunn during its execution.  The Movant and the Debtor own

real estate at 157 Howie Drive, Mt. Holly, North Carolina that includes a house and a barn on two lots ("Residence"). According to the Settlement, the parties continue to own the Residence jointly for their children to inherit, and the Movant has the right to live in the Residence for her lifetime exclusive of the Debtor unless she chooses to leave or remarry.

The Debtor was always the breadwinner during the marriage, and the Movant always relied on the Debtor to provide for the cost of housing. As their kids got older, the Movant began to do some work in their children's school and worked for two years in a doctor's office to provide some supplemental income for the household. Any income she has earned has been below or around minimum wage. The Movant's 2016 Social Security Statement shows that her average annual income since her marriage to the Debtor in 1976 is only $6,425.25, peaking in 2004 at $18,431.00. On cross examination by the Debtor, the Movant admitted that the Social Security Statement calculation for her 2016 gross income was slightly different, however, the difference did not remove her from being around the minimum wage level. At the time the Settlement was signed by the parties, the Movant had been a part-time, substitute school bus driver for about two years. The Movant had moved into a more full-time bus driver position but still only earned approximately $11,000.00 for the year. The Debtor testified that he earned approximately $150,000.00 annually at the time of the Settlement.

The Settlement acknowledges the Movant's need for the Debtor's support with a provision for alimony of $300.00 per week until the Debtor is 67 years old, and, in addition, the provision for mortgage payments indefinitely so the Movant could maintain her housing at the Residence. While awkwardly placed in a portion of the Settlement called "Property Division and Settlement," Section 9.A of the Settlement requires the Debtor to refinance the note secured by the Residence with a new note in his name only and to be "solely responsible for payments on

the new note and . . . make such payments in a timely manner so that the property cannot be foreclosed upon."  Movant's Exhibit A.  The Debtor did refinance the note in his name with Wells Fargo, and he makes the contractual monthly payments directly to Wells Fargo. According to the second paragraph of Section 9.A, the Movant "shall have the right to live in the house located at 157 Howie Drive, to the exclusion of [the Debtor] for her lifetime or until she remarries, unless [the Movant] should sooner elect to move from the property."  Id.  The Movant is still living at the Residence and has not remarried or been able to move at any time since the Settlement as she still cannot afford her own housing.  Ms. Foltz testified that the Movant's primary intention at the time of the Settlement was to stay in the Residence.  She further explained that the Settlement was a difficult agreement to draft and that the Debtor's mortgage obligation was not included in the section labeled as alimony because of the tax implications for the Movant.

In an email to the Movant dated July 21, 2015, the Debtor stated that "I intend to have the house payment ($573 a month which is $6876 a year)) [sic] as part of the alimony payment. This would keep the yearly amount of $15,600 the same but reduce the weekly amount you receive to $168."  Movant's Exhibit C-2.  On January 19, 2016, the Debtor emailed the Movant explaining that he wanted to obtain a tax deduction for the mortgage payments on the Residence as alimony and claiming that he had overpaid the Movant in alimony after taking into account the mortgage payments.  Movant's Exhibit C-1.  The Debtor then declares again that he would be paying a decreased weekly alimony payment as a result of crediting himself for making the mortgage payments.  Id.  The Movant testified that she met with her counsel, Joy M. Chappell of Arthurs & Foltz, LLP, to review the emails from the Debtor.  Ms. Chappell began representing the Movant in her domestic matter in February 2014 after Ms. Foltz retired.  Ms. Chappell

testified that she and the Movant became very concerned that the Debtor appeared to be trying to offset his obligation to pay the monthly alimony to the Movant with his obligation to also pay the mortgage payment to Wells Fargo.  In response to the emails, Ms. Chappell wrote a letter to the Debtor dated February 2, 2016.  In the letter, Ms. Chappell emphasized the differences in the two obligations, even to the point of stating that the mortgage payments were separate from the alimony as a division of marital property under North Carolina General Statute § 50-20. Movant's Exhibit D-1.  Ms. Chappell went on to explain that the Debtor must pay both the named alimony payment and the mortgage payment and that he cannot unilaterally reduce either obligation to obtain tax benefits.  Id.

The Debtor's plan proposes to sell the Residence.  The Movant testified that she rejected the proposal because it left her with nowhere to go.

## CONCLUSIONS OF LAW

### A. The Debtor's Oral Motion to Dismiss

The Court will begin its analysis by considering the Debtor's oral motion to dismiss, which it denies.  In the Fourth Circuit, failure to seek relief through an adversary proceeding does not deprive the bankruptcy court of jurisdiction where adequate due process is afforded. See Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC, 859 F.3d 295, 301–02 (4th Cir. 2017).  As the Court recognized at the hearing on May 26, 2017, the Debtor has received due process in this matter.

The Debtor has conceded that the Court would still have jurisdiction to make a final decision in this matter if due process was adequate; however, he argues that he did not receive due process because the Movant did not file a proof of claim and an adversary proceeding.  The Court disagrees.

8

"Due process requires notice and an opportunity to be heard." McNeil v. Drazin, 499 B.R. 484, 489 (D. Md. 2013) (citing United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 263 (2010)).  The Debtor received due process when he and his attorney were served by first class mail with the Movant's Objection.  In the Objection, the Movant raised with particularity the claim that the Debtor's obligation to maintain the mortgage payments on the note secured by the Residence is a domestic support obligation. The Notice of Hearing for the Objection set a hearing on February 28, 2017, which was continued by agreement of the parties to a special setting on April 21, 2017.  The Debtor filed his Response on April 11, 2017 detailing his position in opposition to the claim raised by the Movant's Objection, and he appeared at the continued hearing on May 26, 2017 to defend his position.  Further, he filed his Debtor's Brief.

The Debtor relies upon McNeil and In re Johnson, 397 B.R. 289 (Bankr. M.D.N.C. 2008), to argue that the Movant did not provide due process because she did not file a proof of claim or an adversary proceeding with the Objection.  Debtor's Brief at 6–8.  However, the Movant in this case provided better due process than the creditor in McNeil.  There, the court found that the debtor received due process because he had an opportunity to object to the creditor's proof of claim.  McNeil, 499 B.R. at 490.  Filing a proof of claim puts the onus on a debtor to review the claim and to object.  Here, the Movant has articulated her claim in her Objection and set the matter for hearing with notice to the Debtor.

Furthermore, the court's decision in Johnson demonstrates that a debtor's obligation to pay his dependent former spouse's mortgage can be determined to be a non-dischargeable domestic support obligation in the context of an objection to confirmation. 397 B.R. at 299.  Due process was not an issue that was discussed by the court.  While the creditor in Johnson filed a proof of claim prior to filing an objection to confirmation, that distinction does not decrease the

9

sufficiency of the notice and hearing afforded by the Movant in this case.  Here, the Debtor

conceded the amount of the pre-petition alimony arrearage in his plan and schedules.  The

Movant has recently filed a proof of claim for the same amount to ensure that any disbursements

by the Chapter 13 Trustee reach the proper recipient.  Furthermore, the issue that is in dispute–

the nature of the Debtor's obligation to pay the Movant's mortgage–is related to a debt that the

Debtor proposes to pay in his plan and a proof of claim that was filed by the mortgagee, Wells

Fargo Bank, N.A., on February 17, 2017.  The Movant's articulation of her claim regarding the

nature of the Debtor's obligation to pay the mortgage in her Objection has afforded the Debtor

better due process than the filing of a duplicative mortgage claim would.

Therefore, the Court concludes that the Debtor has been afforded due process by the

Movant's Objection.

### B. The Movant's Objection to Confirmation

Section 101(14A) of Title 11 of the United States Code (the "Bankruptcy Code") defines

"domestic support obligation" as a debt that is (A) recoverable by a former spouse, (B) in the

nature of alimony, maintenance, or support of such former spouse, and (C) established by a

separation agreement, divorce decree, or property settlement agreement.  11 U.S.C. § 101(14A).

The Bankruptcy Code ensures that a bankruptcy case does not hinder domestic support

obligations with three key provisions.  The Code gives domestic support obligations priority

claim status under § 507(a)(1)(A), excepts domestic support obligations from discharge under

§ 523(a)(5), and, as a condition of confirmation, requires that all amounts required to be paid

under a domestic support obligation must continue to be paid.  11 U.S.C. §§ 507(a)(1)(A),

523(a)(5), 1325(a)(8).

Courts should give the terms alimony and support a "broad construction" in order to promote the legislative policy in support of enforcing domestic support obligations. 4 COLLIER ON BANKRUPTCY, ¶ 523.11[2] (16th ed. 2017). Determining whether an obligation is in the nature of alimony, maintenance, or support is a question of federal bankruptcy law. Long v. West (In re Long), 794 F.2d 928, 930 (4th Cir. 1986) (citation omitted); D'Agostino v. Genovese (In re Genovese), 96 F.3d 1438, 1996 WL 516160 at *2 (4th Cir. 1996) (unpublished table decision) (citation omitted). State law may be considered, but payments that would not be considered alimony or support under state law may be considered alimony or support for purposes of the Bankruptcy Code. Yeates v. Yeates (In re Yeates), 807 F.2d 874, 878 (10th Cir. 1986) (citations omitted). State courts in North Carolina defer to federal courts for determination of whether an obligation is in the nature of support for bankruptcy purposes. See Long v. Long, 401 S.E.2d 401, 405 (N.C. Ct. App. 1991).

In the Fourth Circuit, courts look first to the intent of the parties to distinguish support obligations from divisions of property. Shannon v. Quinn (In re Quinn), 97 B.R. 837, 841 (Bankr. W.D.N.C. 1988) (citing Tilley v. Jessee, 789 F.2d 1074 (4th Cir. 1986)). When the intent of the parties creating the obligation is not explicit, the courts must infer intent by examining the underlying facts and circumstances. Yeates, 807 F.2d at 878 (citations omitted); Lawson v. Lawson (In re Lawson), 14 F.3d 595 (4th Cir. 1993) (unpublished table decision) (citations omitted). Fourth Circuit courts begin the intent inquiry with a non-exhaustive four-factor test: "(1) the actual substance and language of the agreement, (2) the financial situation of the parties at the time of the agreement, (3) the function served by the obligation at the time of the agreement (i.e. daily necessities), and (4) whether there is any evidence of overbearing at the

time of the agreement." Johnson, 397 B.R. at 297 (citation omitted).  The Movant has the burden

of showing that the obligation is in the nature of support.  See id. at 296 (citations omitted).

When considering the first factor, the Court is not bound by the labels used in an

agreement and must look behind them to determine the true nature of an obligation based on the

details of the entire agreement.  See Genovese, 1996 WL 516160, at *3.  Even where a divorce

decree contained a waiver of alimony but the separation agreement created an obligation to make

payments to help provide the other spouse with housing, a court preserved the house payments as

in the nature of support.  See Carrigg v. Carrigg (In re Carrigg), 14 B.R. 658, 661–62 (Bankr.

D.S.C. 1981);  see also Johnson, 397 B.R. at 296 (concluding that payment of support,

maintenance, or alimony need not be paid directly to a former spouse but can be in the form of

mortgage payments.)

Other key factors courts consider regarding the language of the agreement are the number

and frequency of payments as well as whether the obligation terminates upon the death or

remarriage of the recipient.  A long-term obligation to make regular monthly payments is more

likely to be considered support.  Brody v. Brody (In re Brody), 3 F.3d 35, 37–38 (2d Cir. 1993);

see Pattie v. Pattie (In re Pattie), 112 B.R. 437, 439 (Bankr. M.D. Fla. 1990).  An obligation that

terminates on the death or remarriage of the obligee is likely to have been intended for support.

See Fitzgerald v. Fitzgerald (In re Fitzgerald), 9 F.3d 517, 521 (6th Cir. 1993); Morel v. Morel

(In re Morel), 983 F.2d 104, 105 (8th Cir. 1992); Sylvester v. Sylvester, 865 F.2d 1164, 1166

(10th Cir. 1989).

The financial circumstances and needs of the parties when the obligation was created are

usually the most important factors for determining the intent of the parties.  See Yeates, 807 F.2d

at 879.  If a spouse would have difficulty providing a basic need such as housing for herself

12

without the obligation in question, then the obligation is most likely in the nature of alimony, maintenance, or support and, therefore, a nondischargeable priority claim.  See id.; see also Shaver v. Shaver, 736 F.2d 1314, 1317 (9th Cir. 1984) ("Support payments tend to mirror the recipient spouse's need for support."); Long v. Calhoun (In re Calhoun), 715 F.2d 1103, 1109 (6th Cir. 1983) (stating that the inquiry must focus on whether the purpose and effect of the obligation at the time it was created was to provide for the daily needs of a former spouse). Where a separation agreement explicitly required support and, in addition, the payment of a vehicle loan, this Court recently ruled that the obligation of the debtor to pay the vehicle loan payment was a domestic support obligation that was nondischargeable and had to be paid in the debtor's plan.  In re Ward, No. 14-30143, slip op. at 4 (Bankr. W.D.N.C. Jan. 13, 2017) (Order Granting in Part and Denying in Part Amended Motion for Relief from Stay and Objection to Plan).

The fourth factor, evidence of overbearing, considers reasons why the court may question the intent of a party, such as whether the parties were both represented, whether the terms grossly favor one spouse or leave one with no income, or whether there were misrepresentations. Catron v. Catron (In re Catron), 164 B.R. 912, 919 (E.D. Va. 1994) (quoting Kettner v. Kettner, No. 91-587-N, 1991 WL 549386, at *2 (E.D. Va. Nov. 19, 1991)).

The following cases illustrate the application of the four-factor test.  In Johnson, the Bankruptcy Court for the Middle District of North Carolina applied the four-factor test and concluded that the parties intended for a mortgage payment to be additional maintenance and support to maintain lodging for the former spouse because both parties knew she could not afford it on her own.  397 B.R. at 297–99.  In that case, the former spouse of a Chapter 13 debtor filed an objection to confirmation because the debtor made no provision in his plan to pay a mortgage

13

debt as required by the parties' separation agreement.  Id. at 292–94.  According to the

agreement, the debtor assumed sole responsibility for the mortgage secured by the former marital

home because the former spouse was to remain in the home and could not afford to pay the

mortgage.  Id. at 293.  In her objection, the former spouse argued that the obligation to pay the

mortgage was a nondischargeable domestic support obligation under 11 U.S.C. § 523(a)(5).  Id.

at 294.  The court applied the well-established reasoning that "an obligation that enables one's

family to maintain shelter is in the nature of support."  Id. at 299.  As a result, the court

concluded that the totality of the circumstances justified finding the debtor's obligation to pay

the mortgage as a domestic support obligation for three primary reasons: (1) the parties' intent,

(2) the parties' financial circumstances at the time of the agreement evincing the debtor's

superior position, and (3) the function of the debtor's mortgage payments ensuring the former

spouse's shelter.  Id.  Therefore, the court sustained the objection to confirmation and ruled that

the mortgage payment was a domestic support obligation of the debtor that was

nondischargeable and had to be paid through his Chapter 13 plan.  Id.

In Bristow v. Bristow (In re Bristow), the same court concluded that an obligation to pay

a mortgage was in the nature of support where it was necessary to provide shelter for the debtor's

former wife. Nos. 04-6025, 04-50235, 2005 WL 1321996, at *6 (Bankr. M.D.N.C. Apr. 22,

2005).  There, the debtor filed a Chapter 7 bankruptcy, and his former spouse filed a complaint to

determine that his obligation to pay the mortgage on their former marital home was

nondischargeable.  Id. at *2.  The court found that, during a twenty-four year marriage, the

debtor had been the breadwinner, and both spouses wanted the wife to be able to remain home to

care for their children.  Id. at *1, *4.  At divorce, the state court judgments on alimony and

equitable distribution required the debtor to pay the mortgage secured by the marital residence so

the ex-wife could remain living there.  Id. at *6.  The bankruptcy court interpreted the judgments as showing that the debtor's wife was a dependent of the debtor due to his far greater earning capacity and that her budget could not feasibly support the mortgage payments for her to remain in the marital home and maintain the minimum standard of living she had enjoyed during the marriage.  Id. at *2, *6.  These facts, the court concluded, weighed in favor of finding that the mortgage payment obligation was intended to be in the nature of support.  Id. at *6.  The court reasoned that, even if an obligation is labeled as a property settlement, it is a nondischargeable support obligation when it is essential to maintain basic necessities such as payments to ensure housing.  Id. at *5–6 (citations omitted).  Therefore, the court concluded that the mortgage obligation was a nondischargeable support obligation under § 523(a)(5).  Id. at *6.

Similarly, in Ward, this Court ruled that a vehicle loan debt was a nondischargeable domestic support obligation.  Ward, slip op. at 4.  There, this Court found that the debtor believed his payments on a certain vehicle loan would stop once his former spouse remarried, that he treated the car loan payments as alimony for tax purposes, that he wanted his former spouse to have a car with which to provide transportation for their daughter, and that the former spouse could not afford the car payment on her own and needed it to drive the daughter to swim lessons.  Ward, No. 14-30143, Doc. 49 (audio recording of Court's ruling at Nov. 29, 2016 hearing).  The Court reasoned that the car loan payment was in the nature of support because the function it served was to provide for a necessity despite the fact that the provision was in the property settlement section of the separation agreement at issue.  Id.  Therefore, this Court concluded that the former spouse met her burden of showing that the parties intended the car loan obligation to be in the nature of support.  Id.  The Court ruled that the car payments had to

be paid in the debtor's Chapter 13 plan as a nondischargeable domestic support obligation under § 523(a)(5). <u>Ward</u>, slip op. at 4.

By way of contrast, in <u>Webber v. Proffitt (In re Webber)</u>, the Bankruptcy Court for the Western District of Virginia ruled that a provision to make a mortgage payment was not a domestic support obligation. No. 15-70705, 2016 WL 2341184, at *5 (Bankr. W.D. Va. May 2, 2016). There, the court found that a divorce decree ordered the debtor, not the former spouse, to receive the marital residence and maintain the mortgage payments only until the parties could sell the property and split the gain or loss. <u>Id.</u> at *4. The court further found that the former spouse provided no evidence that the debtor was in a superior economic position. <u>Id.</u> The court reasoned that the mortgage obligation did not provide a necessity for the former spouse since the debtor, not the ex-spouse, was to live at the residence until sold. <u>Id.</u> at *5. Therefore, the court concluded that the mortgage obligation was to facilitate the equitable division of property rather than to provide a necessity for the ex-spouse. <u>Id.</u>

The Debtor relies on <u>Pagels v. Pagels (In re Pagels)</u>, where a court ruled that a certain car debt was not a domestic support obligation. Nos. 10-7070, 10-71138, 2011 WL 577357, at *16 (Bankr. E.D. Va. Feb. 9, 2011). That case, however, is distinguishable from the present case. Indeed, that court explicitly noted that the facts were distinguishable from <u>Johnson</u> because the debtor, not the former spouse, was to continue making payments on a loan in exchange for keeping and using the collateral rather than making the collateral available for the needs of the former spouse. <u>Id.</u> at *15. The <u>Pagels</u> case is also distinguishable from this Court's recent decision in <u>Ward</u>, wherein the Court considered a car loan payment to be in the nature of support as discussed above.

Here, the facts are analogous to those in <u>Johnson</u>, <u>Bristow</u>, and <u>Ward</u>.  As with objecting former spouses in those cases, the Movant was the financially dependent spouse who would be unable to pay for necessities without the support of her ex-spouse, the Debtor.   Unlike the divorced parties in <u>Webber</u> and <u>Pagels,</u> the parties here are not simply splitting up the equity and debt related to their marital residence or vehicles.  In those cases, the former spouses were not shown to be financially inferior, and they were not relying on the respective debtors' obligations for housing or transport.  Here, as in the three analogous cases noted above, the Movant was indeed meant to be the primary homemaker and child rearer during the marriage while the Debtor provided for the family financially.  The Movant picked up some work along the way to supplement the household's income, but she never earned significantly more than minimum wage, including at the time of the Settlement.  As a result, she could afford to maintain her housing no better than the objecting spouses in <u>Johnson</u> and <u>Bristow</u>.  Also similar to those cases, the Debtor is obliged by the plain language of an agreement or order.  Section 9.A of the Settlement requires him to take full responsibility for and to maintain a mortgage so that the Movant can live at the former marital home for as long as she chooses unless and until her death or remarriage.

**CONCLUSION**

For all of the reasons discussed above, the Court may treat the Movant's Objection as a timely filed proof of claim and as an adversary proceeding since it was filed well before the respective deadlines and because it clearly articulates the Movant's claim and the relief sought. Given the timeliness and specificity of the Objection, there is no question that the Debtor was put on adequate notice of the nature of the Movant's claim, understood the issues raised by the claim, had ample opportunity to defend against it, and has litigated the claim.  The Debtor's

17

counsel also conceded that discovery was complete.  While an adversary proceeding is perhaps the proper procedure for determining dischargeability, the Court agrees with the court in McNeil that when due process has been satisfied, "failure to use an adversary proceeding when required by Rule 7001 is harmless error."  McNeil, 499 B.R. at 490 (citation omitted).  The Court has jurisdiction to rule even though the Movant did not file an adversary proceeding because adequate due process has been received by the Debtor.

Weighing the evidence in the context of the four-factor test, the Movant has met her burden of proof for a determination that the Debtor's obligation to maintain the mortgage payments is a support obligation and non-dischargeable.  While the Debtor's obligation to pay the Movant's mortgage is found in a section labeled as "Property Division and Settlement," the label is not determinative where factors such as the plain language of the support obligation found in the body of the section, the financial circumstances of the parties, and the function served by the obligation weigh by a preponderance of the evidence in favor of finding the Debtor's obligation to be in the nature of support and maintenance.

First, the plain language reveals that the obligation is a long-term, regular obligation to maintain housing for the Movant and terminates on the Movant's death, remarriage, or decision to move from the residence.  While the obligation is not included in the section of the Settlement labeled as alimony, Ms. Foltz testified regarding the difficulty of drafting the Settlement based on many considerations.  This Court also notes that non-bankruptcy attorneys drafting domestic agreements in the state court law setting are not usually doing so with an eye toward what effect the labels would have in the bankruptcy context.  The same can be said about the letter to the Debtor from Ms. Chappell, who testified that the purpose of the letter was to inform the Debtor that she believed the alimony and the mortgage obligation were two distinct obligations and that

18

paying one would not provide any form of offset for the other.  The intent of the letter was to reiterate that both obligations were intended to be a form of support for the Movant.  Ms. Chappell does not usually appear in bankruptcy court, she was not a party to the Settlement, and she drafted the letter to the Debtor many years after the parties agreed to the Settlement and before the Debtor filed his bankruptcy case.  Her reference to § 50-20 regarding property settlement is not of particular weight and importance for consideration in this context.

Second, it is undisputed that the evidence reveals that the Debtor was the supporting spouse and that the Movant was the dependent spouse both during the marriage and at the time of the Settlement, when the Debtor made a six-figure salary and the Movant's income was below minimum wage.

Third, as a result of the financial circumstances of the parties, it is apparent that the intended function and the actual effect of the obligation is that it continues to provide a necessity—housing for the Movant that she would otherwise be unable to afford.  This is not only true now but, most importantly, it was contemplated by the parties at the execution of the Settlement.  The Debtor's testimony regarding his intention at the time of the Settlement was not perfectly clear and was arguably self-serving.  Taking into consideration the Movant's testimony regarding her financial dependency on the Debtor together with Ms. Foltz's testimony that the primary intent of the Movant at the time of the Settlement was to stay in the Residence, it is not difficult for the Court to conclude that the Debtor agreed to continue the mortgage payments so that the Movant would have a home to live in and that this provision was intended as a form of support for her.

Finally, there is no question that both parties were represented by separate, independent counsel throughout the negotiation and execution of the Settlement.  The Debtor conceded that

there was no evidence of overbearing when the Settlement was negotiated, and it is clear on the face of the Settlement that the Debtor was represented by Mr. Hunn when it was executed. This is supported by the testimony of Ms. Foltz that there was a lot of back and forth with Mr. Hunn in the negotiation before the Settlement was executed.

The Debtor argued that the mortgage obligation could not be a domestic support obligation because it was not owed directly to his former spouse. However, pursuant to the Settlement between the parties, the Debtor's payments allow the Movant to stay in her home. As a result, it is a contractual obligation to her. As with the mortgage obligation in Johnson and the car loan obligation in Ward, it is not important that the Debtor pays Wells Fargo and not the Movant. Therefore, the Debtor's proposal to sell the Residence does not adequately provide for the Debtor's ongoing obligation to support and maintain the Movant by making all of the payments on the note secured by the Residence so that she can continue to live there for her lifetime. While the general rule for applying exceptions to discharge is to construe them liberally in favor of a debtor's fresh start, the long-held public policy for construing the exception to discharge for spousal support in favor of enforcing support obligations over a debtor's fresh start applies in this case. It is, therefore ORDERED that:

1. The Debtor's motion to dismiss Movant's Objection to Confirmation is **DENIED**; the Movant's Objection to Confirmation is hereby deemed a timely filed proof of claim and a timely filed adversary complaint for determination of dischargeability of a debt; and Proof of Claim #19 is allowed in the amount of $16,000.00 for the pre-petition alimony arrearage;

2. The Movant's Objection to Confirmation is **SUSTAINED**, and the Debtor's obligation to maintain the mortgage payments on the note secured by the Residence is in the nature of support and maintenance and, therefore, determined to be a domestic support obligation

as defined by 11 U.S.C. § 101(14A) that is non-dischargeable under 11 U.S.C. § 523(a)(5) and a

priority claim under 11 U.S.C. § 507(a)(1)(A) that must be paid under the Debtor's plan pursuant

to 11 U.S.C. § 1325(a)(8) as an on-going monthly obligation for as long as the Movant lives in

the Residence and remains unmarried; and

3.       The Debtor shall file a motion to modify his Chapter 13 plan on or before thirty

(30) days after the entry of this Order or the case will be dismissed for failure of the plan to be

confirmed.

        **SO ORDERED**.


This Order has been signed                              United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.